## FROST v. FROST.

1. A testator devised to "my two children, U. and S., the tract of land whereon I now live. I give S. 140 acres to be laid off at the upper end of the tract. I give my daughter H. 130 acres on Bee Tree Branch. I give to my son U. all my other lands." *Held*, that S. took the 140 acres in severalty, and that U. and S. took between them the residue of the home tract, and that the "other lands" devised to U. meant lands not specifically mentioned.

2. A deed more than thirty years old was properly admitted in evidence, its genuineness having been established by the corroborative facts that it was found in the grantee's possession, and had endorsed upon it a certificate of registration in the proper office (the records of which office had since been destroyed by fire), and that the grantee had been in the occupancy of the land for over fifty years.

3. A deed by two tenants in common of a specified number of acres construed to convey their interest in a larger tract of land.

4. A case, as reported in "McCord's Reports," was properly admitted in evidence to prove the judgment of the court, the records of both Circuit and Appeal Courts being proved to have been destroyed by fire in 1865. The case thus reported was not only the next best evidence, but was specially made evidence by the act of 1865 (13 *Stat.*, 354).

5. A decision of the court of last resort is binding upon the parties to that suit, although afterwards, in another cause, a different principle is declared.

6. In this state a husband has no estate by curtesy in lands of his deceased wife held by her in fee simple.

7. In 1826, a husband purchased an interest in lands, and thereby became a tenant in common with his wife, who died in 1839, leaving him and their children surviving; and by the death of two of his children he subsequently acquired an interest in their shares. He never claimed to hold the lands adversely to his children, but asserted that it belonged to the estate of his wife. *Held*, that he had committed no ouster, and that to action brought in 1882, by some of the surviving children against a purchaser at sheriff's sale of their father's interest in this land in 1877, the statute of limitations could not be successfully pleaded.

8. The purchaser at the sheriff's sale gave public notice that the land did not belong to this father, but to his children. *Held*, that while the sale stood unimpeached, such purchaser was entitled to all the interest that the father had in such land.

Before HUDSON, J., Richland, April, 1883.

The opinion fully states the case.

*Messrs. Abney & Abney* and *J. P. Thomas, Jr.*, for plaintiffs.

*Mr. F. W. McMaster*, contra.

October 6, 1884.　The opinion of the court was delivered by Mr. Justice McGowan. About the beginning of the century, one Burrill Faust lived on a plantation near the bridge over Crane Creek on the Monticello road, in Richland county. In 1815 he died, leaving surviving him his wife, Christina, and her two unmarried children, Uriah and Sallie. He had been twice married, and by his first wife he had two children, Elizabeth and Mary, but they had both married and settled off; Elizabeth had married James Boatwright, and Mary had married John Glover. Burrill Faust left a will by which he devised as follows: "I give my two children, Uriah and Sallie, the tract of land whereon I now live. I give Sallie one hundred and forty acres, to be laid off at the upper end of the tract adjoining Jasper Faust's lands, by a straight line from the river. I give to my daughter Harriet, a tract of land, containing one hundred and thirty acres, situate in the state and district above mentioned, on Bee Tree Branch, the waters of Crane Creek, bounded, &c. I give to my son Uriah all my other lands," &c. No account can be found of a settlement of the estate or division of the lands, but after the death of the testator, his widow, Christina, and her two children, Sallie and Uriah, continued to live together on the homestead. In or about 1820, Sallie married John D. Frost, sr., who was the owner of large landed estates in the neighborhood; but upon his marriage, he went to live with his wife's family, and engaged in the cultivation of that place in common with his own.

In 1825, Uriah Faust died intestate, never having been married. There was no administration upon his estate, and no proceeding was had to divide or partition the lands between his heirs and his sister Sallie, except what may be regarded as proved by the following facts: In the fourth volume of McCord's Reports, page 439, there is a case reported styled *James Boatwright and*

*others* v. *Christina Faust and others*, which, after citing the clause of Burrill Faust's will making provision for Uriah, states that "James Boatwright and Elizabeth, his wife, and John Glover and Mary, his wife, who are both daughters of Burrill Faust, sued for partition of the lands devised to Uriah Faust, between and among the heirs of Burrill Faust, claiming that a life estate was only devised to Uriah Faust. The defendants demurred, and the demurrer was sustained by Mr. Justice Waities," &c. Upon this statement, the demurrer was overruled by the Appeal Court, which held that "there are no words in this will from which an intention to give a fee can be inferred. By the act of 1824 it is declared that every gift of land by devise shall be considered a gift in fee simple. But that act cannot affect the will now in question, as it was passed since the execution of the will, and even since the death of testator;" and thereupon reversed the judgment below, thereby in effect declaring that, Uriah being dead, the lands given to him became the intestate property of the estate of his father, Burrill Faust, and were distributable among his heirs, viz., Christina, the widow, one-third, and Elizabeth Boatwright, Mary Glover, and Sallie Frost, each, a third of the remaining two-thirds.

The records of both the Circuit and Appeal Courts in Columbia were destroyed when the city was burned in the late war, and one of the questions in the case is whether the book of reports (4 *McCord*) was admissible as evidence of the facts therein stated. In this connection, it appeared that there was an instrument of writing, purporting to be a deed from James Boatwright and wife and John Glover and wife to John D. Frost, sr., bearing date June 21, 1826, conveying to him, for the consideration of $4,240, their shares (stated as 420 acres) of the lands which had been devised for life to Uriah Faust. This paper was found after the death of John D. Frost, sr., in an old trunk which had belonged to him. The execution of the paper was not proved, but it was offered in evidence as "an ancient document." It had upon it evidence that Elizabeth Boatwright and Mary Glover respectively relinquished their inheritance, and that it had been regularly recorded in 1826. Whether this paper was properly admitted in evidence is another question in the case.

John D. Frost, sr., and his family continued to live with the widow, Christina, at the old homestead, until she died. The precise time is not stated. She died intestate, and there was no administration upon her estate or division of her interest in the lands, as her daughter, Sallie Frost, was her sole heir at law. After the death of Christina, John D. Frost and family remained on the home place for some years, but finally moved off to the "Flat House," or Boatwright place, where Sallie Frost died in 1839 intestate, leaving as her heirs at law her husband, John D. Frost, sr., and seven children, viz., Uriah C. Frost, Mary F. Maxcy, Agnes W. Walker, John D. Frost, jr., Sarah A. Guignard, Campbell Frost, and Cassius Frost. There was no administration upon her estate or division of her lands. Campbell and Cassius both died intestate after their mother, unmarried and without children; and no division of their estates was ever made. The children still lived with their father in possession of the old homestead until they respectively married and settled off. The youngest child was born about 1837 or 1838, and was not of full age until about the beginning of the war in 1860. Uriah C. Frost was never married, and Mrs. Maxcy was not married until 1874.

The war came on, and by its results John D. Frost, sr., lost some two hundred slaves and was made insolvent. Judgments were obtained against him, and, after homestead was laid off to him, the sheriff of Richland county, on February 5, 1877, offered for sale, under executions against him, "all that tract of land, five miles from Columbia, on the Monticello and Broad River roads, &c., containing six thousand and five hundred acres," &c. The tract of land thus described consisted of lands which undoubtedly belonged in his own right to the defendant, but also embraced the lands now in question. At the sale, John D. Frost, jr., one of the sons of the defendant in execution, announced publicly that the lands about to be sold as the property of his father, John D. Frost, sr., did not belong to him, but to his children. The sheriff, however, proceeded with the sale, and the lands were knocked down to the said John D. Frost, jr., at the price of $12,350, who, on February 7, 1877, received sheriff's title for the same. John D. Frost, jr., had

always lived upon the land, and he continued to do so until April, 1881, when his father, John D. Frost, sr., died intestate.

On June 2, 1882, the plaintiffs, three of the children of Sallie Frost, instituted these proceedings, alleging that all the said Faust tract of land belonged to the estate of Mrs. Sallie Frost, the last survivor of the Faust children, and praying that it might be partitioned among her surviving heirs, viz., Uriah C. Frost, Mary F. Maxcy, Agnes M. Walker, Sarah A. Guignard, and John D. Frost, jr.  To this the said John D. Frost, jr., being in possession, objected, and claimed that the whole of the land belonged to him in severalty ; that his father, John D. Frost, sr., in his life-time, acquired title to the whole of it, part by the purchase from Mrs. Boatwright and Mrs. Glover, part by inheritance from his deceased wife, Sallie, and sons, Cassius and Campbell, and the remainder by lapse of time and the statute of limitations ; and that being in his father, the title to the whole passed to him as purchaser at the sheriff's sale aforesaid.  It was referred by consent to the master to take the testimony, which is printed in the brief.  The case came on to be heard by Judge Hudson, who decreed that the land belongs to the plaintiffs and defendants in certain proportions, and ordered partition of the same among the parties according to their respective rights so ascertained.  From this decree, both parties appeal upon the following grounds :

### *Exceptions of the Plaintiffs.*

I. Because his honor admitted in evidence the paper purporting to be a deed from Boatwright and Glover and their wives to John D. Frost, sr., holding that it was over thirty years old, and was found in possession of the grantee, when there was no proof of its age outside of the dates on the paper, no proof that the paper had ever been in the possession of the grantee, or that he had ever held under it. II. Because his honor admitted in evidence the 4th volume of McCord's Reports to prove the facts that there was a case between Boatwright and others and matters involved in the case, holding that the loss of records in the court below and the Appeal Court was proved, when the existence of such records never appeared.  III. Because his honor held that John

D. Frost, sr., became entitled under said deed to two-thirds of two-thirds of Uriah's half of the home tract of land. IV. Because his honor admitted in evidence any portion of the testimony reported by the master in his September report (March 31, 1883), his honor holding that the self-serving declarations of J. D. Frost, sr., were not admissible in evidence, but so much of the testimony in this report as was competent, was admissible. V. Because his honor held that the act of 1791 abolished tenancy by the curtesy in fee simple estates in South Carolina, and that the plaintiffs and defendants, as heirs at law of their mother, were not entitled to all the lands mentioned in the complaint. VI. Because his honor held that the deed from the sheriff to John D. Frost, jr., was proved, without the introduction of the advertisement in a newspaper. VII. Because his honor did not hold that John D. Frost, jr., was estopped from denying the title of the children of his mother in and to all of these lands by his conduct at the sale, when he notified the public of their title, &c.

### *Exceptions of John D. Frost, Jr.*

I. Because his honor having admitted as an ancient deed the deed of Boatwright and Glover and their wives, should have held that John D. Frost, sr., was entitled to the full amount of 420 acres conveyed in said deed. II. That his honor erred in decreeing that John D. Frost, sr., was entitled to two-thirds of two-thirds of Uriah's half of the land, instead of holding that J. D. Frost was entitled to two-thirds of two-thirds of the balance of the land. III. That his honor erred in construing the following words of the will of Burrill Faust, "I give my two children, Uriah and Sallie, the tract of land whereon I now live. I give Sallie one hundred and forty acres, to be laid off at the upper end of the tract adjoining Jasper Faust's land by a straight line from the river. * * * I give my son Uriah all my other lands." His honor's construction was that he gave Sallie 140 acres, and one-half of the other land, whereas the construction should have been, that Sallie received as her share the 140 acres, the upper portion of the tract, and the "other lands" should have been construed *the balance of the tract*, this balance being 955 acres, according to the DeBruhl survey, and 985 acres according

to the Miller survey. IV. That his honor erred in holding that the plaintiffs are entitled to rent for the years 1881 and 1882, the plaintiffs having waived all claim to rent prior to the death of John D. Frost, sr., which occurred April 4, 1881; whereas defendant maintains, if any rent should be allowed, it should be computed from the time of bringing this action. V. Because his honor failed to sustain the defendant's plea of the statute of limitations, notwithstanding the proof that John D. Frost, sr., had purchased nearly two-thirds of the land fifty-seven years ago, and had exercised absolute control over the whole of the said tract for about fifty years, and had granted the right of way through the land to the Greenville and Columbia railroad company thirty-five years ago, and for twenty-five years after the youngest child came of age, held the land adverse to plaintiffs. VI. Because the wealth of John D. Frost, sr., his acts of ownership over the land, his advances to his children during a period of over twenty years are such evidences of ouster against the plaintiffs as co-tenants, that his honor should have held that the plaintiffs were estopped from bringing any action. VII. Because his honor erred in not holding that the deed from Mrs. Boatwright and her husband and Mrs. Glover and her husband, and the entering of John D. Frost thereunder and his continued possession thereof, would create a color of title and make in John D. Frost, sr., an adverse possession as to 420 acres of said tract in dispute, &c.

The first question in order is that as to the construction of Burrill Faust's will. As Mr. Preston is reported to have said in the argument of the case in *McCord*, "the will is obviously the production of a very ignorant man." In disposing of his lands he used no paragraphs, but the devises follow each other with no other separation than a dash. There is a separate provision for Harriet (his illegitimate daughter), between that for his two children, Uriah and Sallie, and the phrase lower down, "I give to my son Uriah all my other lands." We do not think that this subsequent provision for Uriah was intended to have reference back to the home place, which had already been given to "Uriah and Sallie," but was to be rather in the nature of a residuary clause, covering and disposing of other lands which might not have been specifically given by the will. Uriah and Sallie

were both unmarried and living with their mother in the homestead, which was on the tract, but outside of the parcel given to Sallie, and the father probably intended to give both of them an interest in the home place, subject to the gift of 140 acres to Sallie in severalty, "to be laid off at the upper end of the tract adjoining Jasper Faust's lands," &c.

As to the admission in evidence of the Boatwright and Glover deed, the rule as to "ancient deeds" is laid down by Mr. Greenleaf in the following terms: "To the rule requiring the production of the witnesses there are some exceptions, and the first is when the instrument is thirty years old, in which case it is said to prove itself, the subscribing witness being presumed to be dead, and other proof being presumed to be beyond the reach of the party. But such documents must be free from just grounds of suspicion, and must come from the proper custody, or have been acted upon so as to afford some corroborative proof of their genuineness." 1 *Green. Evid.*, §§ 570, 144, and note 1.

If the paper is thirty years old, that alone will be sufficient, provided its genuineness is beyond all doubt. Usually certain other facts are required to be shown, as that it came from the proper custody, or has been accompanied by possession, &c., but proof of these facts are required simply in corroboration; that is, that some evidence shall be offered auxiliary to the apparent antiquity of the instrument, to raise a sufficient presumption in its favor. As soon as its genuineness is satisfactorily established by any circumstances, the deed is admitted. "Any incontestable fact going to show that a deed was in existence more than thirty years before it is offered in evidence, will authorize its introduction as an ancient muniment of right. Possession is that which seems to be most generally resorted to for this purpose, because it is the most usual mode of asserting a right under legal title. This, however, is not indispensably necessary. 2 *McCord*, 404." *Swygart* v. *Taylor*, 1 *Rich.*, 54; *Edmondston* v. *Hughes*, *Cheves*, 34; *Thompson* v. *Brannan*, 14 *S. C.*, 550, and authorities.

In this case the deed was found after the death of the grantee, John D. Frost, sr., in an old trunk which had belonged to him. It had probably been in his custody for over fifty years, accompanied

by possession of the premises referred to. It bore date in 1826, and had the marks of having been recorded at the time. Upon this proof of its genuineness, the Circuit judge admitted it in evidence, and we cannot say that he committed error therein.

But in so ruling we do not think that the deed conveyed to John D. Frost, sr., any particular parcel of land containing 420 acres. We hear nothing of an actual partition, which most probably was never made, as Mrs. Sallie Frost and Mrs. Christina, the widow, were the only other persons then thought to have an interest, and they were in possession along with John D. Frost, sr., who simply purchased the interest of Boatwright and wife and Glover and wife. If the parties acted under a mistaken view as to the extent of their shares, that could not enable them to convey larger interests .than they possessed. The shares of the vendors together amounted to two-thirds of two-thirds of Uriah's half of the homestead (outside of the 140 acres of Sallie), which the deed conveyed, and no more.

This deed is in accord with a decision of the highest state court of that day, in the case of *James Boatwright and others* v. *Christina Faust and others*, found in 4 *McCord*, 439, which held that Burrill Faust's will gave Uriah only a life estate in these lands, which, after his death, were distributable among the heirs of the said Burrill, as his intestate property. The original record of that case was not in evidence, but its loss was satisfactorily accounted for by the burning of Columbia during the late war, and the case, as printed in a volume of the reports purporting to be published by "D. J. McCord, state reporter," was the next best evidence upon the subject. 1 *Green.*, § 84, and note ; *Cook* v. *Wood*, 1 *McCord*, 139. Besides, we do not see why the volume of reports was not admissible under the first section of the act of 1865, "'To provide a mode by which to perpetuate testimony in relation to records destroyed 'or lost during the late war," which, among other things, declared that as secondary evidence, "statements in the record of any suit in any of the courts, produced from the proper place of custody, or in the printed volumes of state reports published by the authority of the general assembly, shall be admissible for the consideration of the court or jury, having jurisdiction of the issues of fact," &c. 13

*Stat.*, 345. We are judicially satisfied that there was such a case as reported, and that the judgment was as therein stated.

It is true that judgment gave a different interpretation to the act of 1824 as to the necessity for words of perpetuity in a devise of real estate from that which was soon after (1828) established in the case of *Hall and others* v. *Goodwyn and others*, reported in the same volume (4 *McCord*, 442), which declared that the act of 1824 was a declaratory law and retrospective in its operation. Although the doctrine held in *Boatwright* v. *Faust* was not afterwards approved and followed, yet the case itself, so far as we are informed, was never overruled, and therefore was binding upon the parties to that suit, and as to them must be regarded as a matter adjudged.

John D. Frost, jr., claiming to be the owner of his father's interest in these lands under the sheriff's deed of 1877, insisted that at that time his father, John D. Frost, had acquired title to the whole of it, part by the purchase from Boatwright and Glover, part by inheritance from his deceased wife and children, Campbell and Cassius, and the remainder by adverse possession, lapse of time, and the statute of limitations. To this, it was replied by the other children that as to his wife's lands he was only in possession as husband during her life, and after her death he held it during his own life as tenant by the curtesy, and that the interest of the heirs did not vest in possession until his death in 1881, and of course there could be no adverse possession until that time.

This court has lately held that in this state the husband has no estate by the curtesy in lands of his deceased wife held in fee simple.[1] But we agree with the Circuit judge that nothing was added to the interest of John D. Frost, sr., by operation of the statute of limitations. He had no interest, except as husband, until he purchased the shares of Boatwright and Glover, and thus became tenant in common with his wife, Sallie, in regard to the interest of Uriah under the interpretation of the law then adopted. At the death of Christina he acquired no additional interest, as his wife, Sallie, was the sole heir of her mother. He continued to be tenant in common with his wife until she died in 1837. After her

---

[1] *Gaffney* v. *Peeler*, *ante*, 56.—REPORTER.

death and that of his children, Campbell and Cassius, he had an increase of his interest as heir, but he was still tenant in common with his children who lived with him.   It is familiar law that a tenant in common holds possession for his co-tenants as well as for himself, and cannot plead the statute of limitations unless there has been an ouster and adverse possession.   *Villard* v. *Robert*, 1 *Strob. Eq.*, 393; *Allen* v. *Hall*, 1 *McCord*, 131.   Ouster was not shown by the testimony, and it is not to be assumed that John D. Frost ousted any of his children from the little pittance of an estate inherited from their mother.   On the contrary, as was natural, they lived with him, and his possession was their possession.   He always denied that he held adversely to his children, and refused to allow any part of this land to be included in his homestead, saying "it belonged to the estate of his wife."   We concur with the Circuit judge that there was no ouster, and that John D. Frost, sr., acquired no rights as against his children by the statute of limitations.

In behalf of the other children, it is urged that John D. Frost, jr., is not entitled, as purchaser at the sheriff's sale, to the whole interest of his father, John D. Frost, sr.; that he is estopped from so claiming for the reason that at the sale he gave public notice that the lands did not belong to his father, but to his children.   That announcement probably had the effect of chilling the biddings and of enabling him to purchase the lands for less than their true value, and that should certainly induce him to do no less than exact and scrupulous justice to his brothers and sisters, who were in no way' benefited by that advantageous purchase.   But while that sale stands unimpeached, we are constrained to hold that all the legal title which at that time had vested in John D. Frost, sr., passed by the deed of the sheriff to John D. Frost, jr.   We concur with the Circuit judge that as to the shares of the other children he should account for rents and profits at least from January 1, 1881.

*Shares of the Different Parties.*

| | | |
|---|---|---|
| First. Mrs. Sallie Frost (her share in severalty), | 140 | acres. |
| Her $\frac{1}{2}$ of homestead proper, $985\frac{1}{2}$ acres, . . . | $492\frac{2}{5}$ | " |
| Her mother's $\frac{1}{3}$ of $\frac{1}{2}$ of $985\frac{1}{2}$ (Sallie sole heir), . | $164\frac{1}{4}$ | " |
| Her interest as heir in Uriah's part, $\frac{1}{3}$ of $\frac{2}{3}$ of $\frac{1}{2}$ of $985\frac{1}{2}$, | $109\frac{7}{15}$ | " |
| Sallie's share distributable at her death, . . . | $906\frac{4}{15}$ | " |
| $\frac{1}{3}$ to husband, John D. Frost, sr., . . . . . | $302\frac{4}{15}$ | " |
| For her children, . . . . . . . . | $604\frac{8}{45}$ | " |

Seven children (share of each), . . . . . $\qquad 86\frac{98}{315}$ "

Upon the death of Campbell and Cassius,
  their shares, . . . . . . . $218\frac{14}{15}$

Were divisible among brothers and sisters
  and father (6), . . . . . . . .

Share of father and each living child, . $28\frac{14}{21}$ — $28\frac{98}{315}$ "

Share of each living child, . . . . . . $115\frac{23}{225}$ "

Second. 1. John D. Frost, sr., purchase from B. &
  G. $\frac{2}{3}$ of $\frac{2}{3}$ of $\frac{1}{2}$ of $985\frac{1}{2}$, . . . . . . $218\frac{14}{15}$ "

2. Share of his wife's estate, . . . . . $302\frac{4}{45}$ "

3. Share of estate C., &c., . . . . . $28\frac{14}{21}$ "

Passed to John D. Frost, jr., under sheriff's deed, $549\frac{31}{45}$ "

Added his own proper share, . . . . . $115\frac{23}{225}$ "

Whole share of John D. Frost, jr., . . . . $664\frac{178}{225}$ "
  Chargeable with rents and profits, &c.

| | | |
|---|---|---|
| Share of Uriah C. Frost, . . . . | $115\frac{23}{225}$ | acres. |
| Share of Mary F. Maxcy, . . . . | $115\frac{23}{225}$ | " |
| Share of Agnes M. Walker, . . . | $115\frac{23}{225}$ | " |
| Share of Sarah A. Guignard, . . . | $115\frac{23}{225}$ | " |

The judgment of this court is that the judgment of the Circuit Court be affirmed, and all the appeals dismissed.